**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEBORAH OLDIS | No. 1:26-cr-00071 |

## PROSECUTION VERSION OF THE OFFENSE

Between about October 2018 and April 2022, in the District of Maine, the Defendant, Deborah Oldis, in a matter within the jurisdiction of the Social Security Administration, having knowledge of the occurrence of events affecting the initial or continued right to receive Supplemental Security Income ("SSI") benefits payments, concealed and failed to disclose such events with the intent to fraudulently secure payment in a greater amount or quantity than was due or when no payment was authorized, in violation of 42 U.S.C. § 1383a(a)(3). Specifically, the Defendant intentionally concealed her ownership of assets, including bonds and stocks that she held. The Defendant also intentionally concealed a personal bank account. These resources, if disclosed, would have rendered her ineligible to receive SSI benefits or reduced the benefits she was due.

In this regard, the Government would introduce evidence showing that, at all relevant times, the Social Security Administration (SSA) administered the Supplemental Security Income ("SSI") program, which provides monthly payments to individuals with disabilities and older adults with limited income or resources. At relevant times, there was a "resource limit" of $2,000 to be eligible and remain eligible for SSI, meaning that individuals with resources (cash, stocks, bonds, money in bank accounts) over $2,000

were not eligible for SSI. Individuals receiving SSI were subject to certain reporting requirements with the SSA. They were required to report any changes in income, resources, marital status, and living arrangements to the SSA to continue receiving accurate payments.

On October 1, 2018, the Defendant went to the SSA office in Augusta, Maine, and applied for SSA benefits in-person. On October 2, 2018, the SSA mailed the Defendant a written summary of her application. The application shows that the Defendant reported to the SSA that her disability began on August 23, 2018. In terms of resources, the Defendant disclosed owning a savings account with Kennebec Valley Federal Credit Union (KVFCU) with $100 in it. She reported no income and reported that she received public food assistance benefits. She did not disclose any other resources.

During the application process, the Defendant affirmed that all of the information provided in support of her application was true. The SSA notified the Defendant that she was required to report any changes to the SSA, including any changes to her living arrangements, marital status, income, and "things of value" that she owns. Specifically, the Defendant was advised that she was required to tell the SSA if the value of her resources goes over $2,000 when added together; if she sells or gives things of value away; and if she buys or receives anything of value.

On April 12, 2019, the Defendant affirmed the accuracy of the statements in her application to the SSA in a review statement summary, including that she only had $100 in her KVFCU savings account and had no other income or resources. This summary was mailed to her and contained a reminder about her reporting responsibilities.

On April 19, 2019, the SSA sent the Defendant a "Notice of Award" letter, indicating that her application for SSI benefits had been approved. Beginning May 1,

2019, the Defendant began receiving monthly SSI payments, along with back payments to August 23, 2018 (the date she reported her disability began).

In May 2021, the SSA conducted a periodic review of the Defendant's continued eligibility for SSI benefits. During that review, the Defendant told the SSA that her KVFCU savings account had a value of $100 from May 2019 through April 2021, which was not accurate, as financial records (that were later obtained) from KVFCU show that she had over $2,000 in that account from July 2019 to April 2021. The Defendant also disclosed to the SSA that she owned U.S. Savings bonds valued at over $4,200 since September 2019. She denied owning any other type of resource.

In July 2021, in a written request to the SSA, the Defendant reported that she owned 81.283 shares of stock in a company that was valued at over $5,300.

Through investigation, a Claims Specialist with the SSA discovered that the Defendant also had a savings account at Bangor Savings Bank (BSB) that she had not disclosed to the SSA. The specialist called the Defendant and asked her about the stock shares, and the Defendant said she knew she needed to report them, but she forgot to do so. When the specialist asked about the BSB account, the Defendant said that she didn't know that the SSA knew about that account. The Defendant further admitted that she put money into it to make it look like she was under the $2,000 resource limit.

According to SSA records, the SSA overpaid the Defendant $34,540 in SSI benefits, reflecting a timeframe of September 2018 (for back-payments) through April 2022. The SSA disbursed these monthly payments to the Defendant beginning in May 2019. The last payment made by the SSA to the Defendant was in April 2022.

At the time of her application in October 2018, the Defendant held U.S. Savings bonds in her name valued at over $4,000. She also owned 81.283 shares of stock in a

company that were valued at over $4,100 as of January 2018. When the Defendant applied for SSI benefits in October 2018, she did not disclose the bonds or shares to the SSA. These resources, if disclosed, would have rendered her ineligible to receive SSI benefits or reduced the benefits she was due.

Additionally, financial records from KVFCU show that from July 2019 through September 2021, and from December 2021 through May 2022, the Defendant had over $2,000 in funds in her KVFCU savings account. These resources, if disclosed, would have rendered her ineligible to receive SSI benefits or reduced the benefits she was due.

Further, records from Bangor Savings Bank show that the Defendant opened a savings account with BSB on October 31, 2019, shortly after she began receiving SSI benefits. The Defendant deposited funds into this account to conceal her resources and continue receiving SSI benefits. On June 14, 2024, Special Agent Linn Morten with the SSA-OIG interviewed the Defendant, who admitted that she had an account with BSB and that she did not report it to the SSA. These resources, if disclosed, would have rendered her ineligible to receive SSI benefits or reduced the benefits she was due.

Had this case proceeded to trial, the Government would have proven the above facts through witness testimony, digital evidence, and documentary evidence. The Government would introduce the testimony of relevant witnesses with the SSA and introduce records maintained by the SSA, including the Defendant's application for SSI benefits. The Government would have introduced financial records from BSB and KVCFU to establish the above facts. Further, the Government would have offered the recorded interview of the Defendant as evidence. The evidence would have been sufficient to prove beyond a reasonable doubt the charge contained in the Indictment.

Respectfully submitted,

Date: October 27, 2026

ANDREW B. BENSON
United States Attorney

BY: ***/s/ Alisa Ross***

Alisa Ross
Assistant United States Attorney
United States Attorney's Office
202 Harlow Street, Room 111
Bangor, ME 04401
(207) 945-0373
Alisa.Ross@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2026, I electronically filed the Government's Prosecution Version of the Offense with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to the following:

Charles Hodsdon, Esq.
Counsel for the Defendant

ANDREW B. BENSON
United States Attorney

BY: ***/s/ Alisa Ross***
Alisa Ross
Assistant U.S. Attorney
United States Attorney's Office
202 Harlow Street, Suite 111
Bangor, ME 04401
(207) 945-0373
Alisa.Ross@usdoj.gov